```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY          RECEIVED
                       Civil Action No. 08-342
                                                        MAY - 7 2009
   ------------------------------
                                                        JOEL SCHNEIDER
   In Regard to the Matter of:                        U.S. Magistrate Judge

   Bayside State Prison                    OPINION/REPORT
   Litigation                                 OF THE
                                           SPECIAL MASTER
   EDWIN TORRES

            -vs-

   WILLIAM H. FAUVER, et al,

            Defendants.
   ------------------------------



                        *     *     *     *

                  THURSDAY, APRIL 16, 2009

                        *     *     *     *





   BEFORE THE HONORABLE JOHN W. BISSELL, SPECIAL MASTER
```

|   |   |
|---|---|
| 1 |  |
| 2 |  |
| 3 |  |
| 4 |  |
| 5 | Transcript of proceedings in the above |
| 6 | matter taken by Theresa O. Mastroianni, Certified |
| 7 | Court Reporter, license number 30X100085700, and |
| 8 | Notary Public of the State of New Jersey at the |
| 9 | United States District Court House, One Gerry Plaza, |
| 10 | Camden, New Jersey, 08102, commencing at 11:56 AM. |
| 11 |  |
| 12 |  |
| 13 |  |
| 14 |  |
| 15 |  |
| 16 |  |
| 17 |  |
| 18 |  |
| 19 | **MASTROIANNI & FORMAROLI, INC.** |
| 20 | **Certified Court Reporting & Videoconferencing** |
| 21 | 251 South White Horse Pike |
| 22 | Audubon, New Jersey 08106 |
| 23 | 856-546-1100 |
| 24 |  |
| 25 |  |

**A P P E A R A N C E S:**

```
        LOUGHRY & LINDSAY, ESQUIRES.
        BY:   LAWRENCE W. LINDSAY, ESQUIRE
        330 MARKET STREET
        CAMDEN, NEW JERSEY 08102
        856-968-9201
        ATTORNEYS FOR THE PLAINTIFFS



        ROSELLI & GRIEGEL, PC
        BY:   MARK ROSELLI, ESQUIRE
              - and -
        BY:   KENNETH W. LOZIER  ESQUIRE
        1337 STATE HIGHWAY 33
        HAMILTON SQUARE, NEW JERSEY  08690
        609-586-2257
        ATTORNEYS FOR THE DEFENDANTS
```

1                    JUDGE BISSELL:  I'm now reopening
2      proceedings in the case of Edwin Torres, docket
3      number 08-342.
4                    This opinion/report is being issued
5      pursuant to the directives of the Order of Reference
6      to a Special Master and the Special Master's
7      Agreement and the guiding principles of law which
8      underlie this decision to be applied to the facts
9      upon which it is based as set forth in the jury
10     instructions in the Walker and Mejias jury charges to
11     the extent applicable to the allegations of
12     Mr. Torres.
13                   As finalized after review under Local
14     Civil Rule 52.1, this transcript will constitute the
15     written report required under paragraph seven of the
16     Order of Reference to a Special Master.
17                   Mr. Torres was in F Unit, second tier,
18     on the 30th of July, 1997, the date of Officer
19     Baker's murder.  He testifies and I so find that in
20     the afternoon of that date the SOG officers came to
21     his facility for the purpose of removing people from
22     the cells and taking them to the gym.
23                   He testifies he was hit in the head
24     when told to hurry up and get undressed fast.  He
25     couldn't see who hit him in the head from behind, it

1   felt like something real hard, like a piece of metal.
2   It made him move toward the wall, it made him dizzy,
3   possibly even pass out.  He did, however, indicate
4   that there was no breaking of the skin, that it had
5   swelled up somewhat that night and the next day.
6             He testifies later that he was escorted
7   to the gym, handcuffed coming and going from the gym.
8   That appears to be the only incident of assault on
9   that date.
10            He testifies, however, that on the next
11  day, the 31st of July, a bag lunch was brought to his
12  cell by SOGs, that his lunch was spit on, stomped on
13  and kicked into his cell whereupon one of the people
14  called him a Spic and said we've got something for
15  you.
16            He testified further that some
17  ten minutes later four to five of these officers who
18  were SOGs with ski-type masks over their faces came
19  into his cell.  They told him to get up and face the
20  window, kicked him and punched him, he fell to the
21  ground, he lost consciousness to some extent despite
22  the fact that he had not disobeyed any orders and had
23  no charges eventually filed against him.
24            He testified that as a result of this
25  injuries to his left leg and the left part of his

1   back ensued.
2           There is evidence that indeed in the
3   months and years that followed he did have difficulty
4   with back pain and that at least when transferred to
5   Rahway, he sought some medical attention.  He also
6   received at Southwoods some treatments including hot
7   packs and treatments on his leg.
8           He testifies also that in ensuing time
9   periods while still in the prison setting he was
10  given a cane, a back brace and a knee brace.  These
11  treatments helped, but did not obviate the situation.
12          There was also some evidence presented
13  that in the course of the assaults upon him he
14  received some sort of an eye injury.
15          Also introduced into evidence were
16  Exhibits D-73 and D-74.  Now, it is not entirely
17  clear whether D-74 was an attachment to his
18  Administrative Remedy Form D-73.  The record was
19  confused and, in fact, the witness was somewhat
20  confused about that.  But there is no question that
21  D-74 was generated by him and in its closing
22  paragraph he states that as of December 31, 2000, I
23  am receiving physical therapy treatments at
24  Riverfront State Prison, et cetera.  So that D-74
25  obviously was authored no earlier than the 31st of

```
 1   December, 2000, but still relatively contemporaneous
 2   with the events in question.
 3                I note that D-74 contains a lengthy
 4   recitation of the events which he alleged occurred to
 5   him on the 30th and 31st of July, 1997 and that it's
 6   consistent with his testimony here before me in these
 7   proceedings.
 8                Mr. Torres even went so far as to
 9   testify about some doctor's advice at East Jersey
10   that a disk had been fractured.  However, the medical
11   records which were presented here do not confirm
12   anything that severe and I make no finding of a
13   fractured disk.  Although as I mentioned before,
14   there is evidence to support some continuing back and
15   leg pain.
16                P-36 was also introduced into evidence.
17   This is a collection of medical records, most of
18   which are appended to what is called an
19   electrodiagnostic study performed at Saint Francis
20   Medical Center on this man on or about the 12th of
21   October, 2000.
22                Once again, in recounting the events
23   that occurred to him, he claimed that in 1997 he was
24   slammed into the backboard of a bed and still had
25   pain and numbness in his left leg.  There was some
```

1  notation in the objective findings of a decreased
2  lumber flexion, that's in the lower back, of course,
3  and an apparent radiculopathy (nerve reactions)
4  through his left leg which is also consistent with a
5  lower back trauma.
6          His testimony in court was that while
7  being assaulted in his cell he was slammed into a
8  railing on the side of his bed as opposed to a
9  backboard.  I don't consider that a significant
10  discrepancy.  And apparently as of July of 2000 he
11  was wearing a back brace and also complaining of knee
12  pain that he ascribed to an accident in 1997.
13          However, there are, once again,
14  considerable inaccuracies in his testimony that lead
15  me to conclude that he's not sustained his burden of
16  proof with regard to the injuries which he asserts.
17  And much of this is refuted by the testimony of
18  Officer Church.
19          For instance, plaintiff talks about the
20  SOGs wearing ski masks or similar types of masks that
21  were worn under the helmets to cover up the entire
22  face except for eyes and mouth holes.  Officer Church
23  testified without equivocation that this is not a
24  part of the SOG uniform and that during his tour
25  there and throughout the lockdown he never saw SOGs

1   wearing masks of that kind.
2           Mr. Torres also testified that upon
3   return from the gym on the 30th of July as a result
4   of the search his cell had been completely trashed,
5   with the contents of his property strewn all over the
6   place and in total disarray.  I'm paraphrasing.
7           The reports of the ombudsmen, however,
8   who were observing this movement including the
9   condition of the cells as a result of the search
10  completely refute that characterization.  Officer
11  Church himself was there on duty in F Unit when the
12  inmates returned at approximately one AM, early in
13  the morning of July 31st.  He testified that the
14  cells had not been trashed in this fashion; thereby
15  severely impacting Mr. Torres' credibility.
16          Third, plaintiff talks about the SOGs
17  having delivered lunches on the 31st of July and then
18  returning to beat him up when they detected perhaps
19  some kind of an attitude by this "Spic", to quote
20  him.  The evidence in this case is unequivocal and
21  frankly unassailable that the SOG officers did not
22  deliver the lunches during the lockdown.  The BSP
23  officers did in groups usually of three including a
24  supervisory sergeant, not geared up into the sort of
25  riot gear that the SOGs wore on a permanent basis.

1          I note specifically that no SOG unit
2   was logged into F Unit on July 31st.  These records
3   are not infallible, but I have yet to see a situation
4   where if a SOG team was called in for one reason or
5   another, notations in the log for that unit would not
6   have reflected it.  And as I mentioned already, they
7   did not deliver the lunches.  Accordingly, I reach a
8   determination that they were not there on the 31st of
9   July and, therefore, did not administer any
10  punishment to him on that occasion.
11          I note also Officer Church's testimony,
12  and this is really beyond refutation, that it's a
13  two-step process even to gain access to cells and
14  that the first of those steps requires the housing
15  officer at the podium to open what are called the
16  snap locks on the tier after which keys are issued to
17  an officer to go down and open a particular cell.
18          Under those circumstances I
19  additionally find it not credible that SOG officers
20  on the 31st of July would have gone down to his cell,
21  opened it up and beaten him on that occasion.
22          Finally, Mr. Torres has acknowledged
23  that he got into a fight in December of 1997, a fight
24  which actually got him transferred out of Bayside
25  State Prison in January of 1998.  Given the

```
 1   considerable doubt with regard to the accuracy of his
 2   testimony and the other particulars that I've
 3   mentioned here, it's entirely consistent that the
 4   injuries of which he complains could well have come
 5   from that fight.  He, of course, did not say so, but
 6   under all the circumstances, that is not an
 7   inappropriate inference and could well explain the
 8   continuing difficulties with his back and knee which
 9   is demonstrated in this record.
10             Accordingly, under all of the
11   circumstances here, I find that Mr. Torres, although
12   relatively consistent in his testimony from the year
13   2000 and also at this point, 2009, has just asserted
14   too many things that are not credible and in some
15   cases impossible.
16             I find he's not sustained his burden of
17   establishing his cause of action here.
18             Finally, although not every item of
19   evidence has been discussed in this opinion/report,
20   all evidence presented to the Special Master was
21   reviewed and considered.
22             For the reason set forth above, I
23   recommend in this report that the district court
24   enter an order and judgment of no cause for action
25   with regard to Edwin Torres.
```

```
 1              Counsel that concludes proceedings as
 2   far as I'm concerned for today.  Anything further
 3   before we adjourn?  Mr. Lindsay?
 4              MR. LINDSAY:  No, sir.
 5              JUDGE BISSELL:  Defense counsel?
 6              MR. LOZIER:  No, sir.
 7              JUDGE BISSELL:  All right.  Thank you.
 8              MR. ROSELLI:  See you tomorrow.
 9              (Hearing Adjourned)
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    C E R T I F I C A T E
 2
 3        I, Theresa O. Mastroianni, a Notary Public and
 4   Certified Shorthand Reporter of the State of New
 5   Jersey, do hereby certify that prior to the
 6   commencement of the examination,
 7                       Edwin Torres,
 8   was duly sworn by me to testify the truth, the whole
 9   truth, and nothing but the truth.
10        I DO FURTHER CERTIFY that the foregoing is a
11   true and accurate transcript of the testimony as
12   taken stenographically by and before me at the time,
13   place, and on the date hereinbefore set forth, to the
14   best of my ability.
15        I DO FURTHER CERTIFY that I am neither a
16   relative nor employee nor attorney nor counsel of any
17   of the parties to this action, and that I am neither
18   a relative nor employee of such attorney or counsel,
19   and that I am not financially interested in the
20   action.
21
22
23        _____
             Theresa O. Mastroianni, C.S.R.
24           Notary Public, State of New Jersey
             My Commission Expires May 5, 2010
25           Certificate No. XI0857
             Date: April 16, 2009
```